### WILLIAM HAYDEN Junior *versus* JOSEPH FOSTER.

The provision in the tax act of 1824 (*St.* 1823, *c.* 133), that " whenever any tax shall be assessed on any real estate, liable to taxation, said tax shall be a lien on said estate," extends to county and city taxes, as well as to state taxes; and such lien continues in force until the tax is paid.

*Where separate and distinct real estates belong to the same owner, they are to be considered as distinct subjects of taxation, and must be separately valued and assessed; and each estate is subject to a lien for the payment of that portion only of the owner's tax, which shall be assessed on such particular estate.*

WRIT of *entry sur disseisin,* in which the demandant claimed possession of a certain messuage in Boston, which was held by the tenant.

Plea, the general issue ; which was joined.

The parties stated the following facts.

In the year 1828, Cornelius Coolidge, of Boston, was duly taxed for the state, county and city taxes of that year, the sum of $ 673·16 ; which was the aggregate of the taxes assessed upon twenty-two distinct parcels of land, including the demanded premises, and upon his personal estate and poll. Each parcel of land was separately valued by the assessors, and the tax was assessed upon such distinct valuation. The sum of $49·70 was assessed upon the demanded premises. In 1829, Coolidge was taxed $676·16, of which the sum of $ 55·30 was assessed on the demanded premises ; in 1830, he was taxed $ 415·41, of which $ 38·88 was assessed on the demanded premises ; in 1831, his whole tax was $ 194·26, and the demanded premises were assessed $ 37·92. The annual certificates made by the assessors to the city treasurer and collector do not disclose to him any specific parcels of real estate taxed to any individual ; but they show how much each person is taxed for the whole of his real estate, how much for his personal estate, and how much for his poll. The books of the assessors, however, always show the valuation of each parcel of land, and the rate per cent. at which the tax is assessed.

On November 30, 1832, the city treasurer, having previously complied with the requisitions of the law, caused the demanded premises to be sold by auction, for the purpose

of raising the sum of $2006·70, the amount due from Coolidge, at that time, for taxes upon the whole of his real and personal estate, including interest and costs ; and they were purchased by the demandant, who bid this sum, and were conveyed to him by the city treasurer.

Hayden
v.
Foster.

On May 26, 1827, Coolidge, being owner in fee of the demanded premises, mortgaged them to the tenant, who, on July 1, 1831, entered for breach of the condition, and, at the time of the sale, held them as mortgagee in possession for condition broken. On July 18, 1829, Coolidge conveyed the equity of redemption to assignees for the use of his creditors.

The tenant had no notice that the premises were supposed to be liable for any taxes in arrear, except by the advertisement of the sale, which was inserted by the treasurer in certain newspapers printed in Boston ; unless his knowledge was to be presumed from the fact, that the taxes appeared by the books of the assessors to have been assessed on the premises, for the several sums before mentioned.

The following questions, among others, were submitted to the Court for their decision :

1. Whether the demanded premises were liable in any way for the payment of the sum of $2006·70.

2. Whether they were chargeable, if at all, beyond the particular sums assessed upon them specifically.

If the Court should be of opinion, that a good title did not pass to the demandant by the sale, judgment was to be entered for the tenant ; otherwise, for the demandant.

*J. Pickering* for the demandant.

*W. D. Sohier* for the tenant.

*March 6th.*

SHAW C. J. delivered the opinion of the Court. In this action the Court is called upon to consider and decide upon the validity of the demandant's title, and this depends upon the validity of a sale made at auction by the treasurer and collector of taxes, for the city of Boston. The grantor having no interest, professed to convey by virtue of a power, vested in him by law, to sell real estate under certain circumstances, for the payment of the arrears of taxes. It is obvious that to give effect to such a sale, it must appear that the

*March 18th.*

Hayden
v.
Foster.

case existed upon which the treasurer was authorized by law to make sale, and that he has duly complied with all the requisites of law in conducting the sale. These are conditions precedent, and unless performed, no estate vests in the purchaser. As the estate was sold at auction for one integral sum upon one bid, it seems impossible to consider the sale good in part and bad in part, and therefore if not valid for the whole, the title wholly fails.

It was contended for the tenant, that the *lien* created by law, upon all real estate, for taxes assessed, exists only for the state tax and not for the county and city taxes, and that if it exist at all, it being for an annual tax, it ought to be considered as limited to one year, or other short reasonable time, and if not enforced within such limited time, must be deemed in law to be discharged.

This is a very important question, and it may be useful to consider the statute enactments, upon which it depends, with some attention.

By the tax act of 1821, and it is believed, for some years previous, all taxes on real estate in Boston were declared to be a lien on such estate. By the tax act of 1824, this provision was first extended to all taxes on real estate throughout the commonwealth, and by the subsequent tax acts the same provision has been continued.

What was intended by the statute, by making a tax a *lien* on the estate taxed, may be gathered from the known sense and meaning of the word, in so familiar use in the law, as a charge, an incumbrance, a duty for which the estate itself is responsible into whose hands soever it may come. But if this seem less clear, it is put beyond doubt, by the clause in the statute, which provides to what extent and in what manner such charge shall be made available. The provision in all these several acts is the same, with perhaps some slight verbal differences, not affecting the sense or legal operation.

In the tax act of 1824, under which the taxes in question in this action were levied, it is provided " that whenever any tax shall be assessed on any real estate, liable to taxation, *said* tax shall be a lien on *said* estate ; and if the occupant,

or reputed owner, shall neglect to discharge *said tax* &c., the person authorized to collect said tax may proceed in its collection, from a sale of so much of the same, as may be necessary for the discharge of the tax, and all costs incident to the collection of the same, in the same manner as collectors of taxes may proceed to collect taxes assessed on lands of non-resident proprietors."

This is a public act, and the words are general and extend in terms to *all* taxes, not confining the provision to the state tax laid by that act.  But it further provides, § 7, that all county taxes shall be levied according to the apportionment established by that act, and further, that in the assessment of all county, town, parish or society taxes, the assessors shall govern themselves by the same rules, having regard to such alterations of polls and property as may happen subsequent to the assessment of the tax laid by that act.  The act therefore manifestly looked to the future, and provided for the levying of other taxes, for other public purposes.  This too is conformable to the general rule prescribed by statute for assessing county, town and parish taxes, which provides that they shall be assessed and apportioned upon the polls and estates, according to rules to be prescribed from time to time, by the then last tax act.  *St.* 1785, *c.* 50, § 8.

There seems no room to doubt, therefore, that the provision of law making all taxes upon real estate a lien upon such estate, extends to county and city taxes as well as to state taxes ; and there is no imaginable reason why the provision in the one case should not extend to the other.

Nor can we entertain a doubt that such *lien* continues until the tax is paid.  The purpose of giving this lien seems to have been to provide a further and additional security, in the form of a real pledge for the payment of taxes on real estate.  It is a remedy superadded to those of demand, distress and imprisonment ; and could not have been expected to be resorted to until other means and remedies had failed.  Whether payment of the tax would be presumed after 20 years, or whether the maxim *nullum tempus occurrit regi*, in case of State taxes could be applied to rebut it, are questions which it is not necessary now to con-

Hayden
*v.*
Foster.

sider. In the case before us the term of six years, the ordinary limitation of a simple contract debt, has not yet expired.

But the question most discussed in the present case, and most important to the present defendant, is, whether the tax levied and assessed upon different estates, or parcels of estate, held by one and the same owner, can by force of the statute creating a lien, be made chargeable upon each ; or in other words, whether the whole of several parcels of real estate, however detached and severally occupied, being liable to taxation to one and the same person, are to be deemed one entire and integral subject of taxation, so that the law which provides that so much of the estate may be sold by the collector, as shall be sufficient to pay the tax, may be so applied that one entire parcel may be sold to pay the taxes on the whole ; and the Court are of opinion that it cannot.

This question must depend upon a true and just construction of the statutes. But in a doubtful case, the statute is *to have such a construction as will be best adapted to carry into effect the objects for which it was made, and in a manner most consistent with the interest and convenience of the parties concerned ;* that construction which is best adapted to secure the rights of the public, and the interests of the citizen.

So numerous and various are the collateral, derivative and dependent interests in estates, which are liable to taxation to one common owner, having a general property, that it would be attended with the utmost inconvenience, and produce a great confusion of rights, if the whole could be considered and treated as one integral subject of taxation, so that one entire estate might be sold to discharge the whole tax. The difficulty would not be much relieved, if the one whose estate was wholly taken away could have an action for contribution, upon the principle of average, against the others ; which is extremely doubtful. Persons, not the absolute owners, may have such interests, as mortgagees, tenants, attaching creditors, holders of equities of redemptions, and *cestuis que trust,* and in various other forms, vested or contingent, all of which might be defeated by such a sale, and where no direct claim *to contribution could be established*

But we think the construction which would lead to these inconvenient results, is not the necessary or natural construction. The provision is, that any tax assessed on *any real estate*, shall be a lien on said estate. Each estate is made liable for its own tax and no more ; but it is contended that there is no mode of distinguishing an integral estate, short of putting all that together as one estate, which lies in one town and is taxable to one individual. But whether we regard the common understanding of the word *estates*, or the usage and practice of assessors, or the various statutes *in pari materiâ*, we think it cannot be so understood in this provision.

What constitutes one estate as distinguishable from another estate of the same owner, it may sometimes be attended with difficulty to distinguish accurately ; but practically, in very many, perhaps most cases, it is attended with no difficulty at all. A dwellinghouse with the land and appurtenances occupied with it, a warehouse so occupied, a farm or other parcel of real estate let to the same tenant, by one and the same lease, parcels detached from each other and used and occupied for different purposes, may respectively be regarded as separate and distinct estates. Where this can be done, they must be deemed to be separate and distinct estates, to be distinctly valued and assessed. There may be cases of difficulty ; as where one parcel of vacant land is divided and several dwellinghouses erected, and sold or let to different individuals, it is very questionable whether the tax shall be apportioned, or whether each parcel of the sub-division may be held liable for the whole. But where the distinct estates are in fact severally valued, it shows satisfactorily what was the understanding of the assessors, and proves that no such difficulty existed in the particular case.

That such a several valuation and assessment is contemplated by the several acts on the subject, we think will manifestly appear on reference to them.

The tax act provides, that every freeholder or tenant who may be assessed, and shall pay any sum by way of tax for real estate in his possession, may require his landlord, the owner or agent of *such estate*, to reimburse the half of such

42 *

sum, unless otherwise provided for by agreement. By neces-
sary implication therefore, an estate owned by one and occu-
pied by another as tenant, is to be separately valued and
assessed.

The general law regulating the assessment of taxes pro-
vides, that the assessors shall assess the estates within such
town or district, their due proportion of any tax &c., and
that they shall lodge in the clerk's office the invoice or
valuation from whence the rates or assessments are made,
that the inhabitants or others rated may inspect the same.
*St.* 1785, *c.* 50, § 1.

Connected with this provision, the various provisions of law
are material, exempting certain real estate described from
taxation ; as for instance, estates of ministers, preceptors,
and Latin grammar schoolmasters, under their own personal
management and improvement ; such estates must be separ-
ately valued, otherwise it would be impossible to know whether
such estates are taxed or exempted, where the same owner
holds property thus exempted and property liable to taxation.

But there is another provision, having perhaps a still more
direct application. The clause in the tax acts, making the
tax in the city of Boston, and afterwards through the com-
monwealth, a lien, provides that a collector may make sale
of so much of the same &c , **in** the same manner as col-
lectors of taxes may proceed to collect taxes assessed on
non-resident proprietors.

On reference to *St.* 1785, *c.* 70, § 7, we find the mode
of proceeding in the sale of the lands of non-residents ;
the collector is to publish the names of the proprietors, if
known, with the time and place of sale, and if not known,
he shall· publish the sum of the taxes on the several rights,
lots and divisions, and proceed to sell so much only of said
lands as may be sufficient to pay the tax.

If it is established, as we think it is, that by the general
tenor and effect of the laws of the commonwealth on the
subject of taxes, and the manifest considerations of justice
and convenience applicable to the execution of them, that
taxes are to be assessed on separate estates as integral and
distinct subjects of taxation, it is clear that the law imposing

Hayden<br>v.<br>Foster.

a lien for such tax, makes each particular estate liable for the tax assessed upon such estate only.

In the case before us, we think it is sufficiently shown by the facts agreed, that the estate of the defendant was valued and assessed separately from other estates taxed to the same owner, and therefore was liable for its own tax only. It is found, to take a single instance, that the tax for 1828 was the aggregate of the taxes upon twenty-two parcels of estate, distinctly valued. It was indeed insisted, that although these parcels of estate were separately valued, yet this was done as a means of ascertaining the aggregate, and the tax is to be considered as one tax. But it is found that the books of the assessors show the valuation of each parcel of land, and the rate *per cent.* at which the tax is assessed. This is, to all substantial purposes, a separate assessment, at least as to all separate and distinct estates, as that of the defendant was shown to be. *Id certum est quod certum reddi potest.* The assessors give all the elements of the calculation, and nothing but computation is necessary to show the result. The estate sold was liable for that part of the tax, shown by the assessors' books to be levied and assessed on that estate only, and therefore the sale for the whole was unauthorized, and nothing passed by the treasurer's deed.

*Demandant nonsuit.*